To His Excellency, Aram J. Pothier, Governor of the State of Rhode Island and Providence Plantations:
We have received a communication from Your Excellency referring to Article XI of amendments to the constitution of *Page 167 
the State of Rhode Island, and asking our opinion on the question — "Are the members of the General Assembly entitled to mileage going to and returning from the General Assembly each day up to the limit of sixty days attendance in any calendar year?"
The language of said Article XI, creating the right to mileage is, "the senators and representatives shall . . . receive," . . . "eight cents per mile for traveling expenses in going to and returning from the general assembly." This same language is contained in the constitution of 1842 in Section 11 of Article IV thereof. Considering the language itself only and taking the words used in their ordinary meaning we are strongly inclined to the opinion that they do not contemplate mileage for daily attendance. But inasmuch as the words "in going to and returning from the general assembly" stand without other words of explanation or qualification it may be urged that they are susceptible of differences in interpretation as relates to the amount of mileage due thereunder. The clause therefore may perhaps be taken as ambiguous in this respect. In such case it is proper to seek extrinsic aid in the determination of its meaning by ascertaining the contemporaneous construction placed upon the words at the time of their adoption, and since by those whose duty it has been to construe, execute and apply them in practice.
The constitution of 1842 provided for two sessions of the General Assembly, one at Newport on the first Tuesday of May, the other, the last Tuesday of October, to be held once in two years in South Kingstown, and the other years alternately at Bristol and East Greenwich, and an adjournment of the October session annually in Providence. The first General Assembly elected under the constitution, met in Newport on the first Tuesday in May, 1843, and after sitting five days adjourned to the fourth Monday of June, 1843, to meet in Newport, where, after a further sitting of six days, the session ended. The October session was held in South Kingstown, and was adjourned to Providence to meet in *Page 168 
January, 1844. A special session of two days met in Providence in March, 1844. An examination of the reports of the State treasurer, as printed in the schedules for 1843 and 1844, and an analysis of the payments to members of the General Assembly show that one travel to and from the Assembly only was allowed for each session, and each adjourned session; that is to say, for the May session in Newport, for the adjourned session thereof in Newport in June, for the session in South Kingstown in October, for the adjourned session in Providence in January, 1844, and for the special March session in 1844, mileage for only one going to and returning from the General Assembly was allowed in each instance. Fifteen of the members of this first General Assembly under the constitution, were also members of the convention which framed the constitution. Among them were George A. Brayton, Sylvester G. Shearman and Elisha R. Potter, all afterwards justices of the Supreme Court, and such well-known members of the bar as Wilkins Updike, Charles F. Tillinghast, Henry Y. Cranston, William P. Sheffield, and Richard K. Randolph.
In November, 1854, Article III of the articles of amendment to the constitution was adopted by which it was provided that one session of the General Assembly should be held annually, commencing on the last Tuesday of May in Newport and continuing by adjournment annually in Providence. But the custom of allowing mileage for one "going to and returning from the general assembly" for each session and in addition for attendance upon adjourned sessions thereof has been followed, as we understand, from 1844 to the present time. Undoubtedly there have been at times in the past adjournments of the General Assembly for short periods without the allowance of mileage in consequence thereof, although since 1900, it has been uniformly otherwise. But we know of no instance on the seventy years which have elapsed since the adoption of the constitution showing that in addition to the allowance of one mileage in a given session for "going to and returning from the *Page 169 
general assembly" other mileage has ever been allowed and paid during the said session, except in cases when the session has been interrupted and broken into parts by the adjournment of the General Assembly. In practice this has not been limited to the adjournments provided for by the constitution for, as has already been shown, the General Assembly at its first session under the constitution, of its own motion, adjourned the May session for about six weeks and collected mileage for the adjourned session thus brought about. In other words, the allowance of mileage beyond one taxation thereof in a session has apparently always followed and depended upon an actual break in the session caused by an adjournment of the General Assembly. Section 9 of Article IV of the constitution in expressly limiting the power of adjournment of each house to not more than two days without the consent of the other house in effect implies that the General Assembly after once being lawfully in session, can only adjourn by the joint action of the two houses. Each house may at its convenience adjourn itself from time to time for a period not exceeding two days, irrespective of whether the other house may have adjourned for the same time or not; but the General Assembly as such would not be adjourned by such independent acts of the two houses. As already stated, it can only adjourn by the joint or concurrent action of both houses. There is no evidence therefore showing that at any time since the adoption of the constitution mileage based upon daily attendance has ever been allowed. When the practical construction placed upon an ambiguous constitutional clause by either legislative or executive department has been uniform, of long standing, and has been acquiesced in by the people, such construction may determine the question of its meaning.
Article XI of the articles of amendment to the constitution was adopted in November, 1900. It requires that a session of the General Assembly shall be held annually in January at Providence. Unless modified by the proviso contained in this article, but not hitherto a part of the constitution, *Page 170 
namely, "that no compensation or mileage shall be allowed any senator or representative for more than sixty days attendance in any calendar year," it is clear that Article XI makes no change in the mileage due members. What effect has the proviso in this respect? Does it enlarge or restrict? It seems apparent that the general purpose of the proviso is restrictive. This is expressly so as to the total amount of compensation receivable by members of the General Assembly for attendance. Up to 1901, members received one dollar for every day of attendance however long the session or sessions of the General Assembly continued. Article XI increases the daily compensation from one to five dollars, but the proviso limits and restricts the total amount of compensation receivable for attendance to sixty days in any calendar year as a maximum. With such a restrictive purpose clearly manifest as to compensation can the proviso be reasonably construed as intended to increase the amount of mileage hitherto paid? On its face the limitation or restriction seems to apply equally to mileage and to compensation. And while the limitation may not always come into operation respecting compensation and mileage under precisely the same circumstances no sufficient reason is suggested for the proviso being otherwise than restrictive as to both.
We are of the opinion, therefore, that the reasonable construction of said proviso is that it is both as to compensation and mileage one of limitation and restriction and not one of enlargement. We find, therefore, that the contemporaneous and long continued uniform construction of the words "in going to and returning from the general assembly," as above set forth, has been in a manner entirely inconsistent with the allowance to members of the General Assembly of mileage for each day's actual attendance. Such construction is confirmatory of our view of the meaning of the words above quoted in their relation to the rest of the article of the constitution. We therefore are of the opinion that the members of the General Assembly are not entitled to mileage *Page 171 
going to and returning from the General Assembly each day up to the limit of sixty days, and accordingly answer the question submitted by Your Excellency in the negative.
 CLARKE H. JOHNSON, C. FRANK PARKHURST, WILLIAM H. SWEETLAND, WALTER B. VINCENT, DARIUS BAKER.