**In re ADVISORY OPINION TO the HOUSE OF REPRESENTATIVES.**

**No. 84–94–A.**

Supreme Court of Rhode Island.

Dec. 7, 1984.

Stephen E. Cicilline, James J. Mullen, John F. McDonough, Peter J. McGinn, Douglas A. Giron, Providence, for petitioner.

Stephen A. Lichatin 3rd, Providence, amicus curiae, for R.I. Bar Ass'n.

John A. MacFadyen 3rd, Barbara Hurst, Providence, for respondent.

Dennis J. Roberts II, Atty. Gen., Joseph F. Dugan, Sp. Asst. Atty. Gen., Providence, for amicus curiae.

To the Honorable, the House of Representatives of the State of Rhode Island and Providence Plantations

We have received from Your Honors a resolution requesting, in accordance with the provisions of section 2 of article XII of the amendments to the Constitution of this State, our written opinion on the following question:

Are the provisions of 84 H 7498 of the January session, A.D. 1984, entitled, "An Act Authorizing a Legislative Reimbursement Plan" in violation of Section 1 of Article XI of the amendments to the state constitution?

■ Section 2 of article XII of the amendments to the Rhode Island Constitution requires the justices of this court to "give their written opinion upon any question of law whenever requested * * * by either house of the general assembly." This court has held in the past that "the judges of the Supreme Court are constitutionally obligated to give their written opinions to either house of the General Assembly when the questions propounded concern the constitutionality of pending legislation * * *." *Opinion to the Governor*, 109 R.I. 289, 291–92, 284 A.2d 295, 296 (1971). The question before us involves proposed legislation that, if enacted, would become law January 1, 1985.[1]

■ In determining the constitutionality of legislation, we adhere to principles enunciated many years ago. "The act must stand as valid, unless we are convinced beyond a reasonable doubt, that it is contrary to a provision which is either expressly set forth in the State constitution or must, beyond a reasonable doubt, be necessarily implied from language expressly set forth therein." *Gorham v. Robinson*, 57 R.I. 1, 10, 186 A. 832, 838 (1936). *See also Malinou v. Board of Elections*, 108 R.I. 20, 25, 271 A.2d 798, 800 (1970); *Chartier Real Estate Co. v. Chafee*, 101 R.I. 544, 549, 225 A.2d 766, 769 (1967). It is also well settled that this court will presume legislative enactments of the General Assembly to be constitutional and valid, *Gorham v. Robinson*, 57 R.I. at 7, 186 A. at 837, and will so construe legislative enactments if such a construction is reasonably possible. *Landrigan v. McElroy*, R.I., 457 A.2d 1056, 1061 (1983); *Jamestown School Committee v. Schmidt*, 122 R.I. 185, 191, 405 A.2d 16, 19 (1979). If more than one construction is possible, we shall always adopt the construction that will avoid unconstitutionality. *Opinion to the House of Representatives*, 99 R.I. 382, 387, 208 A.2d 116, 119 (1965). Finally, the "fact ... that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act [itself] is unmistakably and palpably in excess of legislative power." *Gorham v. Robinson*, 57 R.I. at 8, 186 A. at 837 (quoting *Chicago R.R. Co. v. McGuire*, 219 U.S. 549, 569, 31 S.Ct. 259, 263, 55 L.Ed. 328, 339 (1911)). Similarly, the court will not invalidate legislation simply because invalid motives may have secured its adoption. "[I]f what the Legislature has done is constitutional, the reasons why it has done so are irrelevant." *Holmes v. Farmer*, R.I., 475 A.2d 976, 989 (1984) (Kelleher, J., concurring).

With these principles in mind, we now consider the specific legislation and the constitutional provision that is the subject of your request. On receipt of Your Honors' request, we invited the submission of amicus curiae briefs on the question proposed. Briefs were filed in support of both an affirmative and a negative response to the question. We have had the benefit of oral argument by counsel on those briefs. These efforts by the amici have been most helpful to the members of the court in reaching our conclusions. We are very grateful for their service to the court.

The proposed Act, introduced on February 10, 1984, was referred to the House Committee on Finance where it remains

---

1. In *Advisory Opinion to the House of Representatives*, 108 R.I. 151, 272 A.2d 925 (1971), this court declined to give an advisory opinion in a situation in which the House of Representatives had adjourned sine die without waiting to receive the opinion, thereby rendering the question moot. Although the General Assembly adopted a joint resolution of adjournment on May 10, 1984, it was not an adjournment sine die. Each chamber adjourned subject to recall by the Speaker of the House and by the Majority Leader of the Senate. Since no other event has occurred that would prevent the legislators from considering the proposed legislation, we shall render an advisory opinion on the proposed question.

under consideration. The legislation would add to title 22 of the general laws chapter 17 and provide for a legislative reimbursement plan (plan). The purpose of the plan as set forth in chapter 17, section 1, is to enable legislators to better serve their constituency and the state. It would provide reimbursement to legislators for certain legislatively related expenses. The expenses incurred in the discharge of their official duties to be reimbursed are as follows:

a) Mileage within the state to and from legislatively related business but not for attendance at sessions of the general assembly;

b) Postage expenses for performing official duties;

c) Parking fees for legislatively related business;

d) Toll fees for attending legislatively related business; and

e) Telephone charges in the discharge of official business.

The proposed statute further provides that payment of the reimbursement will be at the end of each month at a flat rate, one sum fixed for the months during which the Legislature is in session and a lesser sum fixed for the months during which the Legislature is not in session.

Section 1 of article XI provides that legislators

shall severally receive the sum of five dollars, * * * for every day of actual attendance, and eight cents per mile for traveling expenses in going to and returning from the general assembly; provided that no compensation or mileage shall be allowed any senator or representative for more than sixty days attendance in any calendar year.

This section must be read in conjunction with article IV, section 10, of the Constitution, which provides that the General Assembly

shall continue to exercise the powers they have heretofore exercised, unless prohibited in this constitution.

■ The court has in the past had the opportunity to discuss this very broad declaration of legislative authority contained in section 10 of article IV, and has said that "state legislatures possess plenary power in the legislative area except as the same may be limited by the Constitution of the United States or the constitution of this state." *Opinion to the Governor,* 101 R.I. 203, 206, 221 A.2d 799, 801 (1966) (citing *Payne & Butler v. Providence Gas Co.,* 31 R.I. 295, 77 A. 145 (1910)). This court, and the courts of many of our sister states, has recognized that unlike the Federal Constitution, which contains grants of enumerated powers, state constitutions set forth limitations upon what is otherwise plenary power in state legislatures. *Gelch v. State Board of Elections,* R.I., 482 A.2d 1204 (1984). Therefore, the Legislature may exercise any of its powers, subject only to limitations found either expressly or impliedly in the Federal or State Constitution. *Nugent v. City of East Providence,* 103 R.I. 518, 525–26, 238 A.2d 758, 762 (1968); *Payne & Butler v. Providence Gas Co.,* 31 R.I. 295, 316–17, 77 A. 145, 154 (1910).[2]

Our State Constitution sets compensation for legislators at $5 per day for actual attendance at sessions and $0.08 per mile for traveling to and returning from the General Assembly for no more than sixty days' attendance in any calendar year. The proposed legislation does not attempt to alter that constitutional restriction. Rather, the legislation appears to provide for reimbursement of legislative expenses

---

2. *See also Van Hart v. deGraffenried,* 388 So.2d 1196, 1198 (Ala.1980); *Jones v. Mears,* 256 Ark. 825, 827–28, 510 S.W.2d 857, 859 (1974); *Way v. Superior Court of San Diego County,* 74 Cal. App.3d 165, 174, 141 Cal.Rptr. 383, 389 (1977); *Americans United v. Rogers,* 538 S.W.2d 711, 716 (Mo.1976); *Montgomery v. New York,* 69 Misc.2d 127, 133, 328 N.Y.S.2d 189, 196 (1972); *Verry v. Trenbeath,* 148 N.W.2d 567, 571 (N.D. 1967); *McDonald v. School Board of Yankton,* 90 S.D. 599, 606, 246 N.W.2d 93, 97 (1976); *Witzenburger v. State ex rel. Wyoming Community Dev. Auth.,* 575 P.2d 1100, 1124 (Wyo.1978).

quite distinct from the compensation provided for in the constitution.

A fair reading of the constitutional provision and the proposed legislation leads us to the conclusion that unconstitutionality beyond a reasonable doubt has not been established. The expenses contemplated for reimbursement in the proposed Act are not, in our opinion, contemplated within the connotation of "compensation" as it is used in amendment XI, section 1. An allowance for expenses that a legislator incurs in the performance of his or her official duties is different from compensation or salary. An "expense" is a charge that a legislator incurs in performing services to the state. *Geyso v. City of Cudahy*, 34 Wis.2d 476, 483, 149 N.W.2d 611, 615 (1967). The purpose underlying an expense allowance or reimbursement is to replace funds expended by the legislator in performing his services to the state. *Harlan County v. Blair*, 243 Ky. 777, 779, 49 S.W.2d 1028, 1029 (1932). "Compensation" or "salary", on the other hand, is an allowance of money or fees to recompense or to pay an official for the services he has rendered. *Id.* Therefore, in the absence of a constitutional prohibition, the General Assembly may, by way of legislation, allow for reimbursement to the legislators for expenses *actually incurred* in the performance of official duties. Since the Rhode Island Constitution does not expressly prohibit the General Assembly from making appropriations for legislative expenses, the proposed plan, in principle, would have to be considered compatible with the State Constitution.

Other states have upheld the constitutionality of statutes creating legislative-expense allowances when the state constitution did not expressly prohibit such payments.[3] In *Verry v. Trenbeath*, 148 N.W.2d 567 (N.D.1967), the Supreme Court of North Dakota considered legislation very similar to the legislation that gave rise to the question from Your Honors. The North Dakota Constitution provided that a member of the Legislature "shall receive as a compensation for his services for each session, five dollars per day, and ten cents for every mile of necessary travel in going to and returning from the place of the meeting of the legislative assembly, on the most usual route." *Id.* at 569. The challenged provision of the legislation provided that a legislator shall receive "thirty-five dollars for each month * * * for uncompensated expenses incurred in the execution of his public duties * * * while the legislative assembly is not in session." *Id.*[4] Applying the principle that the Legislature may enact any law not expressly or impliedly forbidden by the constitution, the Supreme Court of North Dakota held that the legislative-reimbursement plan was constitutional. The court stated that "the legislature, not being forbidden by [the State] Constitution, possesses inherently the power to provide expense money for the performance of such public duties as the individual legislator performs * * *." *Id.* at 574.

Similarly, in *Jones v. Mears*, 256 Ark. 825, 510 S.W.2d 857 (1974), the Supreme Court of Arkansas held that a legislative-reimbursement plan was constitutional in the absence of a clear incompatibility with the State or Federal Constitutions and recognized the presumptive constitutionality of any legislative act. In *Jones* the court stressed that the Arkansas Constitution, *as then amended*, did not contain an express prohibition against reimbursement or other allowance beyond that set by the constitution. Without such an express constitutional prohibition, the legislative-reimburse-

---

3. *Van Hart v. deGraffenried*, 388 So.2d 1196, 1199–1200 (Ala.1980); *Jones v. Mears*, 256 Ark. 825, 827–29, 510 S.W.2d 857, 859–60 (1974); *Hoppe v. Washington*, 78 Wash.2d 164, 170, 469 P.2d 909, 913 (1970).

4. Other provisions of the legislation which entitled the legislators to substantial expense moneys were not challenged. The court expressly limited its decision to the challenged provision.

ment plan was valid. *Id.* at 829, 510 S.W.2d at 859.[5]

At oral argument and in their memoranda, amici arguing for a negative response raised the income-tax consequences to individual legislators if lump sums are paid under the plan without any accounting or verification of the expense. They argue that under federal tax regulations, such funds would be treated as taxable income to the individual legislator. Such factors are not a concern of this court. Furthermore, apart from the tax consideration, those who argued against constitutionality point out that some aspects of the proposed plan, such as payments of lump sums without any verification of expense incurred and without any legislative findings of the extent or amount of these expenses to be reimbursed, are proof that the plan is really one for increased compensation rather than for reimbursement of legislatively related expenses. The legislation, however, provides that the legislator *"shall be reimbursed* for official *expenses * * *."* This language demonstrates the clear intent to *reimburse* for expenses incurred. Amici supporting a negative response assume that legislators will accept moneys for expenses never incurred. Such an assumption flies in the face of a time-honored presumption, adopted by this court in *Opinion to the Governor,* 95 R.I. 109, 122, 185 A.2d 111, 118 (1962), that legislators and other public officials are presumed to act legally and in good faith in the discharge of their duties. Those concerns however, do arise from the apparent inconsistency in the language of the Act—"reimbursement" on the one hand and "flat rate" payment on the other. Therefore, some consideration of a resolution of this inconsistency before enactment would be warranted. This could be accomplished by legislative hearings and declarations and findings of fact by the Legislature or by provision in the plan for an accounting for the expenses claimed for reimbursement.

The supporters of a negative response also argue that because the State Constitution has provided for $5 per day for attendance and $0.08 per mile for traveling expenses in going to and returning from the General Assembly, the Legislature is precluded from providing for reimbursement of other legislatively related expenses. The principle on which they base this argument originates in the maxim "Expressio Unius Est Exclusio Alterius"—that is, the expression of one thing is the exclusion of another. They argue that it would make no sense for the framers of the constitution to have singled out travel for restriction and not have intended thereby to rule out all other legislatively related expenses. We believe this argument must fail for several reasons. We are not convinced that the maxim is relevant in situations in which we are interpreting our State Constitution. As we have said, it is well settled that the State Legislature possesses plenary power in the legislative area, limited only by the State and Federal Constitutions. The Legislature may exercise any of its powers subject only to limitations found either expressly or by necessary implication in the constitutions. *Nugent v. City of East Providence,* 103 R.I. 518, 525–26, 238 A.2d 758, 762 (1968). In *Opinion to the Governor,* 55 R.I. 56, 70, 178 A. 433, 440 (1935), this court said that " 'the maxim * * * is more applicable to deeds and contracts than to a constitution, and requires great caution in its application, in all cases.' ". In the same opinion, this court also quoted with approval the language of Judge Bradley, a former chief justice of the Rhode Island Supreme Court, in his publication entitled "The Methods of Changing the Constitution of the States, especially that of Rhode Island" (1885), with reference to the maxim: "[T]he people, in such proceedings, say what they mean. They do not leave a negation of one power to be inferred from the grant of another." *Id.*

---

**5.** *See also Berry v. Gordon,* 237 Ark. 547, 376 S.W.2d 279 (1964); *but see Ashton v. Ferguson,* 164 Ark. 254, 261 S.W. 624 (1924) (where the court invalidated similar legislation as that in

*Jones* because the Arkansas Constitution at that time contained an express prohibition against allowances).

More recently, we have held that in construing a statute, the maxim "is merely an aid to construction and is not dispositive of legislative intent * * *." *Volpe v. Stillman White Co.*, R.I., 415 A.2d 1034, 1036 (1980). It follows, then, that the maxim would have even less application when the construction of a state constitution is at issue and constitutionality is to be presumed unless the contrary is proven beyond a reasonable doubt. We conclude, therefore, that the provision in our State Constitution for $0.08 per mile for travel expenses to and from the General Assembly sessions does not preclude any reimbursement for other expenses that are legislatively related.

■ We are of the opinion, therefore, that the underlying concept of 84 H 7489 of the January session, A.D. 1984, an Act authorizing a legislative reimbursement plan, is not in violation of section 1 of article XI of the amendments to the State Constitution. However, we are unable to determine whether the specific sums set forth in the Act are factually consistent with a plan of reimbursement. The finding of fact in that regard is not a function that is within our competence. That must be performed, in this instance, by the Honorable House of Representatives unless Your Honors decide to amend the proposed legislation by providing for an accounting of the legislatively related expenses to be reimbursed.

> Respectfully submitted
> JOSEPH A. BEVILACQUA, C.J.
> THOMAS F. KELLEHER, J.
> JOSEPH R. WEISBERGER, J.
> DONALD F. SHEA, J.

MURRAY, Justice, dissenting.

There can be little doubt that those citizens who choose to offer their services to the State of Rhode Island as members of the General Assembly are rewarded by a compensation and expense-reimbursement package that is woefully inadequate. The legislative remuneration scheme set forth in *article* XI, section 1 of the amendments to the Rhode Island Constitution, virtually ensures that economic sacrifices must be made by legislators in order to fulfill their obligations as servants of the people. Moreover, it undoubtedly acts as a barrier to those who would and could render this important public service but are economically precluded from so doing. It is my personal opinion that the constitutional restriction on legislative compensation and reimbursement is contrary to the goal of a state government that is representative, efficient, and effective. However, this court has been called upon to render a judicial opinion with respect to a proposed legislative Act which I perceive to be contrary to an express provision of the Rhode Island Constitution. For this reason I must respectfully dissent from the majority opinion.

In determining the constitutionality of a legislative Act, the question is purely one of legislative power and not one of sound policy. *Gorham v. Robinson*, 57 R.I. 1, 7, 186 A. 832, 837 (1936). In the area of legislative remuneration, the General Assembly's power is limited by article XI, section 1 of the amendments to the Constitution of the State of Rhode Island, which provides, in part, that

> [t]he senators and representatives shall severally receive the sum of five dollars * * * for every day of actual attendance, and eight cents per mile for traveling expenses in going to and returning from the general assembly; provided that no compensation or mileage shall be allowed any senator or representative for more than sixty days attendance in any calendar year.

The Act we are called upon to consider attempts to reconcile itself with the above provision by the use of semantics. It states that "[m]embers of the general assembly *shall be reimbursed* for official expenses at the end of each month * * * without the necessity of providing evidence of such expenses." (Emphasis added.) The Act goes on to specify a "flat rate" of reimbursement of $175 per month from

January through May and $100 per month from June through December. Thus, every member of the General Assembly *"shall be reimbursed"* $1,575 per year, or $3,150 per two-year term.[6]

The majority opinion stands on two premises, neither of which I find persuasive. The first premise is that article XI addresses only compensation and mileage expenses to and from meetings of the General Assembly, and thus the Act does not intrude into a constitutionally regulated area. A fair reading of the majority opinion indicates that these two types of renumeration may never be altered except by constitutional amendment, but all other types of remuneration are subject to legislative adjustment. I do not believe that the framers possessed such a narrow view in adopting article XI. That article of amendment was intended to provide a total compensation package, not to limit remuneration for compensation and mileage to and from meetings but to leave open every other type of reimbursement. The *Journal of the Convention*, p. 38 (1859) states candidly that "[a] mileage was given them [the members] to pay their expenses." I think it is clear that the mileage allowance of article XI was meant to cover expenses in general. The entire package taken together was intended to promote public service by offsetting expenses and by paying a small per diem. It follows that any attempt to alter this package must be accomplished through constitutional amendment, not through legislation.

It is conceded that article XI is ambiguous on the above point and that the contemporaneous construction given that amendment is by no means clear. One point is clear, however. With one exception, every effort ever made to increase legislative remuneration has been soundly defeated by the people of this state. In 1900, compensation was increased from $1 to $5 per day. Since then every effort to persuade a skeptical populace to increase legislative compensation has failed. Voters have repeatedly rejected such proposals.[7] Where an ambiguous constitutional clause has been construed by the Executive Department and the Legislature, and where such construction has been uniform and long-standing, and acquiesced in by the people, the meaning may be determined by the long-standing construction. *Opinion to the Governor*, 35 R.I. 166, 169, 85 A. 1056, 1057 (1913). There can be little doubt that until the present Act, legislative remuneration has been determined to be the sole province of the people, and the people have spoken.

Whether the populace has spoken irrationally is of no concern. The people have chosen not to alter article XI, and I am not persuaded that this court should attempt to construe otherwise what has already been thoroughly debated and defeated by the electorate. I believe that any proposal to

---

6. Under article XI of the amendments to the Rhode Island Constitution, compensation can reach a maximum of $300 per year or $600 for any two-year term (plus mileage allowances).

7. State constitutional conventions, as well as other public forums, have consistently dealt with the issue of legislative compensation. The compensation schemes proposed or adopted have varied, but one constant has remained—all such proposals have been rejected by the electorate. *See, e.g., Proceedings of the Limited Constitutional Convention*, pp. 64–70 (1951) (adopting resolution to amend constitution to compensate members at rate of $25 per day for up to sixty days' attendance); *Proceedings of the Limited Constitutional Convention*, pp. 44–52 (1955) (adopting resolution to amend constitution to compensate members at salary of $1,500 per calendar year); *Report of Commission on Revision of the Rhode Island Constitution*, p. 12 (1962) (recommending that constitutional provision on members' salary be deleted and that compensation be left to legislation); *The Proceedings of the Rhode Island Constitutional Convention of 1973*, pp. 113–151, 156 (1973) (adopting proposal to fix legislative compensation by law subject to approval of majority of voters at general election and setting interim remuneration at $2,000 per year and $0.15 per mile); *Report of the Public Commission to Study the Constitutional Amendment Relating to Compensation of the General Assembly*, p. 5 (April 22, 1980) (recommending abolishment of article XI and creation of a permanent Legislative Compensation Review Commission).

amend the remuneration scheme set forth in article XI should be taken to the citizens of this state for a decision.

Even were I of the opinion that article XI, section 1 allows for legislative reimbursement for expenses other than mileage to. and from the General Assembly, I am not persuaded by the majority's second premise, namely, that moneys which *shall* be paid as reimbursement, at a "flat rate" and without the necessity of an accounting, are in fact reimbursement. Indeed, there is no directive in the Act that either prescribes that moneys paid be in direct relation to expenses or prohibits the payment of moneys in the absence of expenses. It simply provides for a flat-rate payment each month. I am not convinced that the $1,575 which shall be paid to members every year is reimbursement because the Act labels it such. It is, in my view, compensation, a reality which cannot be altered by a choice of words.

The infirmity of the Act appears evident to me not only in its failure to provide for an accounting of legislative expenses, but also in its overall lack of particularity in regard to such expenditures. For instance, section 22–17–2(a) of the proposed Act allows reimbursement for "mileage within the state to and from legislatively related business * * *." There is no specificity as to how such reimbursement is to be calculated. Presumably, reimbursement could be determined at the $0.08 per mile specified in the Constitution. It could also be calculated by determining the cost of gasoline, the miles per gallon which a particular automobile will travel, and the number of miles traveled. Insurance costs could be factored in, or maintenance costs, or even depreciation of the automobile. The Act is silent on these because such matters are of little relevance in its "reimbursement" scheme, which has little, if anything, to do with actual expenses.

The majority correctly points out that legislators will always be presumed to act legally and in good faith. The infirmities *of this* Act, however, stem not from the possible actions of individual legislators, but from the Act itself. I am not persuaded that the concept of "flat rate" payment, purportedly in reimbursement of actual expenses, and with no guidelines as to how such expenses should· be calculated, is constitutional. I feel strongly that legislators deserve enhanced compensation, but I believe this end must be accomplished by Constitutional amendment and may not be accomplished by the proposed legislation.