Kevin **KENNEDY** et al.

v.

**STATE of Rhode Island.**

No. 93–254–Appeal.

Supreme Court of Rhode Island.

Feb. 27, 1995.

Mary Elizabeth McCaffrey, John T. McCaffrey, McCaffrey & McCaffrey, Warwick, for plaintiffs.

Jeffrey Pine, Atty. Gen., Rebecca Tedford Partington, Sp. Asst. Atty. Gen., for defendant.

## OPINION

LEDERBERG, Justice.

The issue before the Supreme Court is whether the Rhode Island General Assembly violated the equal protection provisions of the Rhode Island and United States Constitutions by enacting legislation[1] that authorized Kevin Kennedy (plaintiff) to bring suit against the State of Rhode Island (defendant) for an amount in excess of the limitation on damages set forth in the Governmental Tort Liability Act. Following the defendant's challenge to the constitutionality of the legislation, the Superior Court entered an order invalidating the act. In response to the plaintiffs' appeal, we vacate the order and sustain the validity of the act in respect to the authorization of suit by the plaintiff. We point out, however, that the act failed to receive the requisite two-thirds vote of each house of the General Assembly as mandated by article 6, section 11, of the Rhode Island Constitution for bills appropriating public money for private purposes.

1. The legislation authorized "an action to be brought * * * by Kevin Kennedy" (plaintiff); the resulting suit and this appeal were brought by Kevin Kennedy and his wife Denise Kennedy (plaintiffs).

## FACTS AND PROCEDURAL HISTORY

In the early hours of November 2, 1982, Kevin Kennedy, accompanied by his wife Denise, was admitted to the Benjamin Rush facility in the Division of Substance Abuse of the State of Rhode Island with a diagnosis of acute alcohol intoxication. Less than three hours later, Kevin Kennedy fell from a window of his third-floor room and sustained serious bodily injuries.

On October 31, 1984, plaintiffs filed suit in Superior Court alleging that the State "negligently and carelessly caused and permitted the third floor windows * * * to be and remain in a dangerous and unsafe condition" thereby causing Kevin Kennedy's injuries. In their complaint, Kevin Kennedy claimed damages of $250,000 for bodily injuries and for monies lost due to his incapacitation, and Denise Kennedy claimed damages of $50,000 for loss of consortium.

At the time Kevin Kennedy was injured, the Governmental Tort Liability Act, G.L. 1956 (1969 Reenactment) § 9–31–2, as amended by P.L.1974, ch. 39, § 1, limited the damages recoverable in any tort action against the state to $50,000.[2] In May 1983, the House of Representatives passed 83–H 5952, a bill submitted by a legislator from plaintiffs' city. This act granted "Kevin Kennedy * * * permission to institute suit * * * against the state of Rhode Island * * * for damages in an amount not to exceed two hundred and fifty thousand dollars ($250,-000), inclusive of interest and costs. * * * If the court or jury shall find that said Kevin Kennedy sustained damages as a result of the negligence of the state of Rhode Island and Providence Plantations acting through its agents or servants, the court or jury shall award to and render judgment for the said Kevin Kennedy * * * but in no event in excess of two hundred and fifty thousand dollars ($250,000), inclusive of interest and costs." The act also "appropriated * * * out of any money in the treasury not otherwise appropriated, a sum sufficient for the payment of any judgment * * * entered in favor of said Kevin Kennedy."

At trial, defendant moved for partial summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, asserting that 83–H 5952 was a "special act" which violated the equal protection of the laws as guaranteed under the state and federal constitutions. After a hearing, the Superior Court granted defendant's motion in July 1992, and plaintiffs, pursuant to G.L. 1956 (1985 Reenactment) § 9–24–1, filed a notice of appeal.

## THE ISSUE

In their appeal, plaintiffs contended that the passage of 83–H 5952 (the authorizing act) was a constitutional exercise of the power of the General Assembly under the Governmental Tort Liability Act and further contended that the act does not violate the guarantees of equal protection under the state or the federal constitutions. The state, although conceding the constitutionality of the Governmental Tort Liability Act, argued that the authorizing act is unconstitutional because it denies the equal protection of the laws as guaranteed in federal and state constitutions.

## THE POWER OF THE GENERAL ASSEMBLY

■ This court has long recognized that after the adoption of the State Constitution, the powers of the crown and parliament resided in the Legislature, "less the power taken therefrom for the federal government and also minus whatever powers were taken from it by the constitution of the State[.]" *Payne & Butler v. Providence Gas Co.*, 31 R.I. 295, 315, 77 A. 145, 153 (1910). Unlike the Federal Constitution, which contains grants of enumerated powers, the constitution of this state sets forth limitations upon what is otherwise plenary power in the state Legislature. *In re Advisory Opinion to the House of Representatives*, 485 A.2d 550, 553 (R.I.1984). More specifically, this court has consistently adhered to the view that the General Assembly possesses "all of the pow-

---

**2.** The limitation of damages was raised from $50,000 to $100,000 by P.L.1984, ch. 87, § 1, effective January 1, 1985.

ers inhering in sovereignty other than those which the constitution textually commits to other branches of our state government and that those that are not so committed * * * are powers reserved to the general assembly." *Nugent v. City of East Providence,* 103 R.I. 518, 525–26, 238 A.2d 758, 762 (1968); *see Kass v. Retirement Board of the Employees' Retirement System of the State of Rhode Island,* 567 A.2d 358, 360 (R.I.1989). Hence, the General Assembly may exercise any of such powers, subject only to those limitations expressly or implicitly found in the Constitution of the United States or the Constitution of the State of Rhode Island. *Kass,* 567 A.2d at 360; *In re Advisory Opinion to the House of Representatives,* 485 A.2d at 553. Consequently, in our evaluation of legislative enactments, including those in which "judges may hold views inconsistent with the propriety of the legislation in question [we are] afford[ed] no ground for judicial interference" unless the legislation at issue can be characterized "unmistakably and palpably [as an] excess of legislative power." *In re Advisory Opinion to the House of Representatives,* 485 A.2d at 552 (quoting *Gorham v. Robinson,* 57 R.I. 1, 8, 186 A. 832, 837 (1936)).

■ In respect to the authorizing act in question, the plaintiffs have asserted that the enactment represents a valid exercise of legislative authority pursuant to the Governmental Tort Liability Act, chapter 31 of title 9 of the General Laws. General Laws 1956 (1969 Reenactment) § 9–31–5, as amended by P.L.1973, ch. 255, § 1, provides that:

> "CLAIM APPROPRIATIONS.—Notwithstanding the provisions of this chapter the general assembly may make such appropriations as it shall deem proper in payment of or settlement of claims against the state, provided, however, there is hereby appropriated out of any money in the treasury not otherwise appropriated a sum sufficient to pay claims against the state settled pursuant to the provisions of this chapter and the state controller is hereby

authorized and directed to draw his orders upon the general treasurer for the payment of said sum."

Thus, notwithstanding the limitations on damages set forth in § 9–31–2, see *supra,* the Legislature has reserved to itself the authority to appropriate funds for claims against the state. Absent a finding that the power to appropriate funds has been "commit[ted] to other branches of our state government" by the constitutional text, such power is "reserved to the general assembly" as one of the "powers inhering in sovereignty." *Nugent,* 103 R.I. at 525, 238 A.2d at 762. Not only does the State Constitution fail to display such a commitment, but in fact article 6, section 11, explicitly delineates the minimum "[v]ote required to pass local or private appropriations." That section stipulates that "[t]he assent of two-thirds of the members elected to each house of the general assembly shall be required to every bill *appropriating the public money or property for local or private purposes.*" (Emphasis added.) Therefore it is our conclusion that in the exercise of its "plenary power" the General Assembly may appropriate public funds for private purposes provided that the minimum-vote requirements set forth in article 6, section 11, of the Rhode Island Constitution are met.

## THE CONSTITUTIONALITY OF THE ACT

The Fourteenth Amendment to the Federal Constitution guarantees to all persons within the jurisdiction of any state "the equal protection of the laws." *U.S. Const.* Amend. XIV, § 1. Although there was no specific equal protection statement in the Rhode Island Constitution at the time 83–H 5952 was passed,[3] this court has held that article 1, section 2, provided "essentially a guarantee of equal protection of the laws"[4] to persons of this state. *City of Warwick v. Almac's, Inc.,* 442 A.2d 1265, 1270 (R.I.1982); *Sweet-*

---

3. The Rhode Island Constitution was amended in 1986 to include, *inter alia,* an equal protection clause. Article 1, section 2.

4. In 1983 article 1, section 2, of the Rhode Island Constitution provided that "[a]ll free govern-

ments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

*man v. Town of Cumberland,* 117 R.I. 134, 151, 364 A.2d 1277, 1288 (1976).

In ascertaining whether the authorizing act satisfies equal protection requirements, we are constrained by the well-settled principle that legislative enactments of the General Assembly are presumed to be valid and constitutional. *Kass,* 567 A.2d at 360; *In re Advisory Opinion to the House of Representatives,* 485 A.2d at 552. Moreover, the party challenging the constitutional validity of an act carries the burden of persuading the court beyond a reasonable doubt that the act violates an identifiable aspect of the state or federal constitution. *Brennan v. Kirby,* 529 A.2d 633, 639 (R.I.1987).

The state argued that 83–H 5952 violates the guarantees of equal protection because the act granted to plaintiff the privilege of bringing suit against the state for an amount in excess of the statutory limitation of § 9–31–2, a privilege not generally available to other claimants. However, a "fundamental principle of equal-protection analysis is that not all legislative classifications are impermissible." *Boucher v. Sayeed,* 459 A.2d 87, 91 (R.I.1983). The Fourteenth Amendment to the United States Constitution permits to states "a wide scope of discretion in enacting laws which affect some groups of citizens differently from others." *Burrillville Racing Association v. State,* 118 R.I. 154, 157, 372 A.2d 979, 981–82 (1977).

In determining whether a statute complies with equal-protection standards, we must examine both the nature of the classification established by the act and the individual rights which may be violated by the act. *Boucher,* 459 A.2d at 91. If a statute either "infringes upon fundamental rights or results in the creation of a suspect classification[,]" the statute must be examined with strict scrutiny. *Id. See, e.g., Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ("rigorous" or strict scrutiny is applied in analyzing a statute which infringed upon the right to marry); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (freedom of choice to marry may not be restricted by invidious statutory racial discrimination). On the other hand, if an act employs a gender-based classification, the gender-based difference must be substantially related to the achievement of the statutory objective. *Craig v. Boren,* 429 U.S. 190, 204, 97 S.Ct. 451, 460, 50 L.Ed.2d 397, 411 (1976). Finally, "minimal scrutiny is generally applied to economic and social regulations." *Boucher,* 459 A.2d at 91; *see, e.g., Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (in the area of economics and social policy, the state's action must be rationally based and the legislative classification must be free from invidious discrimination).

The authorizing act before us entails neither a suspect classification nor a fundamental right, nor a gender-based classification. In fact, the parties agreed on appeal that the proper standard of review of the act is minimal scrutiny, a standard that requires the act under review to be "rationally related to a legitimate state interest." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976) (per curiam).

It is the conclusion of this court that there exist legitimate public interests in protecting the state treasury from excessive tort claims, along with equally valid public interests in providing compensation for just and equitable claims against the state.[5] In examining whether 83–H 5952 bears a "rational relationship" to these legitimate state purposes, our inquiry must determine whether the Legislature "*could* rationally conclude that [this act] would effectuate a resolution to a legitimate problem." *Power v. City of Providence,* 582 A.2d 895, 902 (R.I.1990) (citing *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472–73, 45 L.Ed.2d 522, 545–46 (1975)). The equal-protection safeguard is offended only if an act "rests on grounds wholly irrelevant to the achievement of the State's objective. * * * A statutory discrim-

---

5. The Legislature has waived the state's sovereign immunity in respect to tort claims that fall within the limit set forth in G.L.1956 (1969 Reenactment) § 9–31–2, as amended by P. L.1974, ch. 39, § 1. Notwithstanding that limitation, "in all instances in which the state was engaged in a propriety [*sic*] function in the commission" of a tort, "the limitation on damages set forth" in § 9–31–2 does not apply.

ination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

In an effort to adequately compensate those claimants who have sustained particularly serious injuries as a result of torts committed by the state, the Legislature, on a case-by-case basis, has enacted bills authorizing suit against the state and appropriating sums to satisfy potential judgments in favor of claimants in excess of the statutory limit imposed by § 9–31–2.[6] Such "private" bills allow the Legislature to make a preliminary evaluation of the validity of each claim, thereby protecting the public treasury from meritless claims. In addition, appropriations may be made on behalf of claimants whose successful damage awards exceed the limitation in § 9–31–2. Therefore, because we cannot conclude that 83–H 5952 is "wholly irrelevant to the achievement" of the state's objectives, we hold that 83–H 5952 is rationally related to legitimate public purposes and thus must be sustained against equal-protection challenges under minimal scrutiny review.

### APPROPRIATION OF FUNDS IN 83–H 5952

Section 4 of 83–H 5952 appropriated from the treasury "a sum sufficient for the payment of any judgment which may be entered in favor of said Kevin Kennedy" in his tort action against the state. As noted *supra,* article 6, section 11, of the Rhode Island Constitution requires the "assent of two-thirds of the *members elected* to each house of the general assembly" in order to appropriate public money for "local or private purposes." (Emphasis added.) Our examination of the Senate and House Journals has revealed that 83–H 5952 was passed on May 11, 1983, by a roll call vote of sixty-four to zero in the House, and on May 13, 1983, by a roll call vote of thirty-eight to zero in the Senate. Thus, the House vote fell short of the two-thirds required by article 6, section 11, for private appropriations. Hence, the amount appropriated under section 4 of the act must be stricken. The remaining provisions of 83–H 5952 are, however, valid and enforceable. *City of Providence v. Moulton,* 52 R.I. 236, 238, 160 A. 75, 76 (1932) (although the section of a statute appropriating money for a local purpose was stricken because it did not pass with the assent of two-thirds of the members elected, the remaining sections were valid and capable of being executed).

In summary, we conclude that 83–H 5952 does not deny the equal protection of the laws as guaranteed by the State and the Federal Constitutions. However, the appropriation under section 4 of the act is invalid. Accordingly, we sustain the appeal, vacate the order for partial summary judgment, and remand the case to the Superior Court.

---

6. Our review of legislative records disclosed that, during 1983, the Legislature enacted thirteen bills that allowed suit against the state and raised the statutory limit for specific tort claimants, and enacted eight bills that allowed claims against certain cities and towns.