**Stephen KASS**

v.

**RETIREMENT BOARD OF THE EMPLOYEES' RETIREMENT SYSTEM OF the STATE OF RHODE ISLAND et al.**

No. 88–348–A.

Supreme Court of Rhode Island.

Dec. 14, 1989.

George M. Vetter, Vetter & White, Inc., Providence, for plaintiff.

Angelica B. Gosz, John F. Dolan, Rice, Dolan & Kershaw, Providence, for defendants.

OPINION

WEISBERGER, Justice.

This case is before us on the plaintiff's appeal from summary judgment entered in favor of the defendants by a justice of the Superior Court. The trial justice found that members of the General Assembly may participate in the state retirement system, notwithstanding any other allowances for legislative stipends and travel expenses contained in article VI, section 3 of the 1986 Rhode Island Constitution. We affirm. The facts insofar as pertinent to this appeal are as follows.

In 1936 the General Assembly enacted legislation establishing the Employees' Re-

tirement System for the State of Rhode Island (the retirement system). P.L.1936, ch. 2334, now codified as G.L.1956 (1984 Reenactment) §§ 36–8–1, 36–8–2. This enabling legislation called for the creation of the Retirement Board of the Employees' Retirement System of the State of Rhode Island (the retirement board) to administer and manage the state retirement system. P.L.1936, ch. 2334, now codified as G.L. 1956 (1984 Reenactment) §§ 36–8–3, 36–8–4. Under the original provisions of the 1936 legislation, the members of the General Assembly and certain other state officers and employees were expressly excluded from participation in the retirement system. P.L.1936, ch. 2334, § 14 (also excluding general officers of the state, members of the judiciary, and public school teachers).

By 1947 the legislation was modified and the restriction barring members of the General Assembly from participating in the state retirement system was removed. P.L.1947, ch.1971, § 5, now codified as G.L. 1956 (1984 Reenactment) § 36–10–9.1 (also allowing general officers of the state to participate); *see also* P.L.1951, ch. 2830 (allowing public school teachers to participate) *and* G.L.1956 (1985 Reenactment) §§ 8–3–7 through 8–3–17 (establishing a separate retirement system for members of the judiciary). Under the statutory provisions beginning in 1947, qualifying members of the General Assembly have been eligible to participate in the retirement system, although numerous changes in the eligibility requirements and the measure of benefits have since been enacted. *See* P.L. 1960, ch. 20; P.L.1964, ch. 240; P.L.1968, ch. 152; P.L.1973, ch. 42; P.L.1987, ch. 370. At present a participating retired legislator upon reaching fifty-five years of age and having served a minimum period of eight years of aggregate service (which may include up to four years of military service) will be entitled to receive an annual pension of $600 for each year of total service. Section 36–10–9.1. The maximum benefit payable is $12,000 for twenty years of service

in the General Assembly. Section 36–10–10.1.

During periods of active service in the General Assembly, state legislators receive a five dollar daily stipend and eight cents per mile for traveling expenses as provided in art. VI, sec. 3, of the 1986 Rhode Island Constitution. This section parallels article IV, section 11, of the first Rhode Island Constitution of 1843, but the original provision allowed for a daily stipend of only one dollar. In 1900 the Rhode Island electorate approved the existing daily stipend for its state legislators. By an amendment to the State Constitution, the daily stipend was increased from one dollar to five dollars, with the proviso that compensation would only be allowed for a maximum of sixty days actual attendance. Article XI, section 1 of Amendments to Rhode Island Constitution of 1843. In spite of numerous attempts to increase their daily stipend, each legislator who attends the General Assembly for a maximum of sixty days presently still receives a total annual salary of only $300, plus travel expenses of eight cents per mile for going to and from the General Assembly.

On November 13, 1987, plaintiff Stephen Kass filed this suit for declaratory relief in Superior Court against the Retirement Board of the Employees' Retirement System of the State of Rhode Island and Roger Begin in his official capacity as General Treasurer for the State of Rhode Island and as chairman of the retirement board (since replaced by the present General Treasurer Anthony Solomon). In his complaint, plaintiff, a citizen and taxpayer of the State of Rhode Island,[1] contends that G.L.1956 (1984 Reenactment) §§ 36–8–1(2), 36–10–1, 36–10–2, 36–10–7, 36–10–9.1, and 36–10–10.1 are unconstitutional insofar as these provisions allow state legislators to receive pension benefits beyond the daily stipend specified in art. VI, sec. 3 of the Rhode Island Constitution. The plaintiff alleges that art. VI, sec. 3 sets forth all the compensation available to legislators in

---

**1.** We assume, without deciding, that plaintiff-taxpayer Kass has standing to bring this suit owing to the "substantial public interest" in re-solving this issue. *See Sennott v. Hawksley,* 103 R.I. 730, 732, 241 A.2d 286, 287 (1968).

the form of daily stipends and travel expenses, and that the challenged pension benefits are therefore impermissible compensation under our constitution. He argues that the General Assembly has circumvented the provisions of art. VI, sec. 3 of our constitution by granting themselves additional monies in the form of retirement benefits. Accordingly, plaintiff further sought injunctive relief to prohibit defendants General Treasurer and the retirement board from continuing to distribute pension funds to qualifying retired members of the General Assembly.

On February 10, 1987, several active and retired state legislators were allowed to intervene as defendants. The defendant-intervenors moved for summary judgment on February 17, 1987, and defendants General Treasurer and the retirement board joined in the motion. The plaintiff objected to the motion and filed a cross-motion for summary judgment on January 11, 1988. After hearing oral argument, the trial justice found that no genuine issue of material fact existed, and that legislative pension benefits were not prohibited by art. VI, sec. 3 of our constitution. The trial justice issued a written decision on July 15, 1988, granting defendants' motion for summary judgment and denying plaintiff's motion. The plaintiff appeals from judgment entered for all defendants.

■ This court is asked to consider whether the statutory provisions that permit qualifying retired state legislators to participate in the state retirement system are unconstitutional under art. VI, sec. 3 of the 1986 Rhode Island Constitution. In order to prevail in his challenge to the constitutionality of these statutes, plaintiff Kass must demonstrate beyond a reasonable doubt that there exists a provision in our constitution that either expressly or by necessary implication prohibits the allowance of legislative pensions. *See Gorham v. Robinson*, 57 R.I. 1, 10, 186 A. 832, 838 (1936). Moreover, *In re Advisory Opinion to the House of Representatives*, 485 A.2d 550, 552 (R.I.1984), fully sets forth the rationale employed by this court in construing a statute:

"It is also well settled that this court will presume legislative enactments of the General Assembly to be constitutional and valid, *Gorham v. Robinson*, 57 R.I. at 7, 186 A. at 837, and will so construe legislative enactments if such a construction is reasonably possible. *Landrigan v. McElroy*, R.I., 457 A.2d 1056, 1061 (1983); *Jamestown School Committee v. Schmidt*, 122 R.I. 185, 191, 405 A.2d 16, 19 (1979). If more than one construction is possible, we shall always adopt the construction that will avoid unconstitutionality. *Opinion to the House of Representatives*, 99 R.I. 382, 387, 208 A.2d 116, 119 (1965)."

While our present constitution delineates the parameters for certain forms of legislative compensation, a fair interpretation of art. VI, sec. 3 and other relevant provisions of the 1986 Rhode Island Constitution nevertheless compels us to conclude that participation by state legislators in the retirement system is neither by express means nor by necessary implication prohibited for the reasons set forth below.

We begin our analysis by reenunciating a principle expounded by Justice Oliver Wendell Holmes in *New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963, 983 (1921), "[A] page of history is worth a volume of logic" in determining the extent of state as well as federal constitutional limitations.

Historically, the power of the General Assembly in this state, as in other states, has been plenary and unlimited, save as this authority may have been limited by the Constitution of the United States and the Constitution of the State of Rhode Island. *In re Advisory Opinion to the House of Representatives*, 485 A.2d at 553; *Opinion to the Governor*, 101 R.I. 203, 206, 221 A.2d 799, 801 (1966); *Payne & Butler v. Providence Gas Co.*, 31 R.I. 295, 315, 77 A. 145, 153 (1910). It has been set forth in *Payne & Butler v. Providence Gas Co.*, *supra*, that from the granting of the charter of King Charles II, July 8, 1663, to the date of the acknowledgment of our independence by the British Crown, the Rhode Island Legislature possessed the complete

powers conferred by the royal charter and thereafter from the time of independence the Legislature had the combined powers of crown and Parliament, which included all attributes of sovereign authority. *Id.* After May 29, 1790, when this state in convention ratified the Federal Constitution, those powers were limited by that Constitution. Thereafter, until May 1843, the Legislature retained all residual powers of sovereignty, save those delegated to the federal government. *Id.* at 315, 77 A. at 153–54. In 1843 these powers were again diminished by limitations set forth in our State Constitution.

Unlike the United States Congress, the Rhode Island General Assembly does not look to our State Constitution for grants of power. *In re Advisory Opinion to the House of Representatives,* 485 A.2d at 553; *Payne & Butler,* 31 R.I. at 316, 77 A. at 154. Accordingly, this court has consistently adhered to the view that the General Assembly possessed "all of the powers inhering in sovereignty other than those which the constitution textually commits to the other branches of our state government and that those that are not so committed * * * are powers reserved to the general assembly." *Nugent v. City of East Providence,* 103 R.I. 518, 525–26, 238 A.2d 758, 762 (1968).

The 1986 electorate reaffirmed the plenary legislative power of the Rhode Island General Assembly, as encapsulated in art. VI, sec. 10:

"The general assembly shall continue to exercise the powers it has heretofore exercised, unless prohibited in *this* Constitution." (Emphasis added.)

This provision must be construed to constitute a reaffirmation of the powers historically exercised by the Legislature under the prior constitution. It is clear beyond doubt that one of the powers so exercised by the Legislature was the granting of pension benefits to state officers, employees and to retired members of the General Assembly.

As this court has recently reasserted, art. VI, sec. 10 confers upon the General Assembly legislative power that is broad and plenary, "save insofar as it may be prohibited in express terms by the constitution of this state or limited by the federal constitution." *Forte Brothers, Inc. v. Department of Transportation,* 541 A.2d 1194, 1195 (R.I.1988). The power of the Rhode Island General Assembly to enact legislation is checked only by a textual limitation within our constitution. *Nugent,* 103 R.I. at 525, 238 A.2d at 762. Therefore, in the absence of any constitutional limitation, the General Assembly has the legislative power to grant its members retirement benefits.

The limitations imposed upon the plenary legislative power of the General Assembly are limited to those that are "prohibited by *this* Constitution." 1986 Rhode Island Constitution, art. VI, sec. 10. (Emphasis added.) In spite of the many amendments to art. VI, sec. 3 that were proposed at the 1986 constitutional convention, no prohibition on legislative retirement benefits was incorporated into the 1986 constitution as ratified by the electorate. Although it may be argued that the framers of the original constitution were completely unaware that legislators or other employees might become members of and benefit from a pension system, it cannot be said that the framers of the 1986 constitution were similarly unaware of pension benefits that had long been conferred both on state employees and upon members of the Legislature. Legislative pensions had been granted in varying amounts for nearly forty years as the 1986 convention took place.

Article VI, sec. 3 of the 1986 Rhode Island Constitution provides in pertinent part:

"The senators and representatives shall severally receive the sum of five dollars * * * for every day of actual attendance, and eight cents per mile for traveling expenses in going to and returning from the general assembly; provided that no compensation or mileage shall be allowed any senator or representative for more than sixty days attendance in any calendar year."

It should be noted that nothing in the language of art. VI, sec. 3 may be construed

as an express reference to "pensions" or "retirement" benefits. The plaintiff argues, however, that because the term "compensation" is used in the text of art. VI, sec. 3, pension or retirement benefits are, by definition, governed by art. VI, sec. 3. We disagree. While the words of art. VI, sec. 3 of our constitution do not expressly sanction participation by members of the General Assembly in the state retirement system, neither do they prohibit it.

Apart from any historical context, we believe that the plain and intended meaning of the term "compensation" as used in art. VI, sec. 3, is merely to refer back to the daily stipend in the first clause of this provision. In analyzing the grammatical construction of art. VI, sec. 3, the terms "compensation" and "mileage" in the second clause are used wholly in relation to the phrases "the sum of five dollars * * * for every day of actual attendance" and "eight cents per mile for traveling expenses," respectively, as contained in the first clause. To suggest that the term "compensation" refers to something more than the daily stipend would require that this court interpret "mileage" to preclude other forms of expense reimbursement than "eight cents per mile." This we have already declined to do. See In re Advisory Opinion to the House of Representatives, 485 A.2d 550 (R.I.1984). We are not confronted with the problem of defining the term "compensation" as it may be used in other contextual frameworks but only as this term is used in a subsidiary clause of art. VI, sec. 3, dealing with the subject of daily stipends. In fact, the prohibition merely states that neither compensation nor mileage shall be allowed for more than sixty days attendance in a single calendar year. It is clear that this limitation only applies to the daily stipend and mileage allowance.

The plaintiff's mere categorization of legislative pensions as within the general definition of the term "compensation" is not helpful in determining the intended meaning of this term *as it is used* in art. VI, sec. 3. Rather, an examination of the origins and historical development of art. VI, sec. 3 is necessary to determine its present constitutional construction. *Opinion of the House of Representatives*, 45 R.I. 289, 120 A. 868 (1923).

Section 3 of article VI traces its descent from art. IV, sec. 11 of the first Rhode Island Constitution of 1843. Each particular provision of art. VI, sec. 3 has been retained from or parallels art. IV, sec. 11 of the 1843 constitution, which provided:

"The senators and representatives shall receive the sum of one dollar for every day of attendance, and eight cents per mile for traveling expenses in going to and returning from the general assembly."

At the time of our 1843 constitution, however, no state employee pension program existed. It was not until 1936 that the General Assembly passed the enabling legislation to establish a general state retirement system. P.L.1936, ch. 2334. Moreover, members of the General Assembly had expressly excluded themselves from participating in the retirement system until 1947. P.L.1947, ch.1971, § 5(5). Accordingly, it cannot reasonably be suggested that art. IV, sec. 11, the original parallel provision to art. VI, sec. 3, was intended by its drafters to prohibit a legislative retirement program. For this court now to hold that art. VI, sec. 3 does prohibit legislative retirement benefits would be to give it a breadth and meaning never intended by the electorate in 1842.

In *Opinion to the Governor*, 35 R.I. 166, 169, 85 A. 1056, 1057 (1913), this court stated:

"When the practical construction placed upon an ambiguous constitutional clause by either legislative or executive department has been uniform, of long standing, and has been acquiesced in by the people, such construction may determine the question of its meaning."

We believe that the construction of the constitutional provision in question here is similarly capable of ready determination. There is no doubt that there has been a general pattern of successive legislation on the topic of pension benefits for members

of the General Assembly. *See* P.L.1960, ch. 20; P.L.1964, ch. 240; P.L.1968, ch. 152; P.L.1973, ch. 42; P.L.1987, ch. 370. Furthermore, qualifying members of the General Assembly have contributed to and received benefits from the retirement system since 1947.[2] It was not until forty years later, in 1987, only one year after our plenary constitutional convention, that these statutory provisions allowing legislators to participate in the state retirement system were challenged for the first time by plaintiff Kass. While we would agree with plaintiff that mere tardiness in bringing suit does not prevent a constitutional challenge, *see Metals Recycling Co. v. Maccarone*, 527 A.2d 1127, 1129 (R.I.1987), we believe that the substantial delay here coupled with factors set forth below demonstrate that the General Assembly had the power to allow its members to participate in the state retirement system.

In 1986 a convention was authorized and assembled with power to redraft the entire Rhode Island Constitution. The delegates, whose numbers included plaintiff Kass, were elected by the people of this state. Among the many proposed changes that were put to the vote of the delegates were several proposals to amend art. VI, sec. 3. This constitutional provision had remained virtually unchanged since 1900. Some of the proposed amendments to art. VI, sec. 3 sought to incorporate and limit the existing legislative retirement benefits through very explicit language expressly making reference to such benefits. For example, one such proposal read as follows:

> Each member of the general assembly shall be allowed optional participation in

the retirement system and in the medical and life insurance programs offered to other full-time state employees. Contributions to and eligibility requirements for these benefits shall be identical to those of other Rhode Island state employees." 1 *Journal of the 1986 Constitutional Convention* at 4 (May 29, 1986).[3]

The delegates failed, however, to approve for presentation to the Rhode Island electorate any such proposed amendment to art. VI, sec. 3.

The framers of the 1986 constitution did not hesitate to submit to the electorate alternative proposals concerning the daily stipend to which legislators would be entitled. One proposal put to the vote of the electorate would have increased this daily stipend to "a sum equal to the average weekly earnings of Rhode Island manufacturing workers, * * * divided by a four day legislative week," about seventy-six dollars. 1 *Journal of the 1986 Constitutional Convention* at 3. The alternative proposal was to retain the same stipendiary amount as had been approved in 1900 of five dollars per day. The electorate chose the latter, rejecting the proposed increase in the legislative stipend even though it must have been apparent to both the framers (delegates) and the electorate that the erosion of the purchasing power of the dollar between 1900 and 1986 had been nothing less than dramatic. The Consumer Price Index reveals that one dollar in 1900 would purchase the equivalent of $13.20 in 1986.[4] Consequently, in terms of purchasing power, this alternative resulted in a

---

**2.** The plaintiff points out that state legislators contribute a disproportionately small amount into the retirement fund as compared with other state workers. Our task is not to pass judgment on the actuarial soundness of the retirement system but rather to determine the constitutionality *vel non* of these statutory provisions. *See In re Opinion to the Governor*, 55 R.I. 56, 178 A. 433 (1935). It is a question of power, not the wisdom of its exercise. Nevertheless, members of the General Assembly have contributed to the legislative retirement system since its inception in 1947.

**3.** Some of these proposed amendments distinguished between retirement benefits and the

daily stipend and travel allowance by making separate reference to each. This fact tends to demonstrate a recognition by the delegates that legislative retirement benefits were not previously governed by art. VI, sec. 3.

**4.** The erosion of the purchasing power has continued so that, according to the Consumer Price Index, one dollar in 1900 would equal $14.25 in 1988, and a five-dollar daily stipend in 1900 would presently be equivalent to approximately $71.25 per day. It is interesting to note that this figure is very similar to the amount set forth in the proposed increased daily stipend submitted to the voters in 1986.

substantial diminution of the daily stipend from 1900 to 1986.

Nevertheless, the delegates chose not to present any of the proposals expressly relating to legislative pension benefits to the electorate as part of the provisions of the new constitution. This choice was made in spite of the fact that the delegates were well aware that the Legislature had by statute participated in the state pension program for nearly forty years. They also were cognizant of the fact that from and after the amendments adopted by P.L.1960, ch. 20, the legislative benefits were not actuarially based on contributions made by General Assembly members during their period of active service.

Specifically, by virtue of P.L.1960, ch. 20, § 3 a retired member of the General Assembly could receive a maximum pension of $2,000 annually. Pursuant to P.L.1964, ch. 240, § 2 a retired member of the General Assembly could receive a maximum pension of $3,000 annually. By virtue of P.L. 1968, ch. 152, § 2 a retired member of the General Assembly could receive a maximum pension of $4,000 annually. By virtue of P.L.1973, ch. 42, § 1 a retired member of the General Assembly could receive a maximum pension of $6,000 annually. Thus, for a period of 26 years (1960 to 1986) retired members of the General Assembly were by statute made eligible to receive pension benefits in excess of that which could be actuarially based upon their contributions. For thirteen years (1973 to 1986) prior to the promulgation of the 1986 Constitution, these benefits were significantly in excess of a sum which could be actuarially justified by contributions. Therefore, the delegates to the 1986 Constitution, including the plaintiff, were well aware that over a long period of time General Assembly members had by statute been awarded substantial retirement benefits funded in great part by public monies, and that these retirement benefits were statutorily authorized above and beyond the daily stipend that had been paid since 1900.

After carefully considering the language of the 1986 constitution, and in light of the history of the granting of statutory pension benefits to members of the Legislature, the awareness of the delegates of the existence of such pension benefits, and the widespread knowledge of this retirement benefit arrangement for legislators, we are compelled to the conclusion that had those delegates desired to prohibit statutory pension benefits to state legislators, they would have done so by explicit prohibition. To attempt to interpret language adopted in 1900 to accomplish this end would be to amend the constitution as adopted in 1986. This we have no power to do.

For the reasons stated, the plaintiff's appeal is denied and dismissed, and the summary judgment entered in the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.