[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiffs in this action are Rhode Island residents who are members of a multi-member unincorporated association denominated "REFORM 92." All but one are also depositors at one or more of the closed financial institutions which are presently in receivership.
Plaintiffs complain that the Rhode Island Depositor Economic Protection Corporation ("DEPCO"), which was established by the legislature on February 8, 1991 (§ 44-116-1 et seq.,
R.I.G.L.), unlawfully intends to use funds committed to its care, custody, and control to underwrite legal expenses and other costs incurred by the Select Commission to Investigate the Failure of RISDIC Insured Financial Institutions (the "Commission"). That Commission was legislatively established and approved by the Governor on March 13, 1991. P.L. 91-015. In their complaint the plaintiffs seek an order enjoining DEPCO from so utilizing its funds and/or a judgment under the Uniform Declaratory Judgments Act, § 9-30-1 et seq., R.I.G.L., declaring that the use of such funds violates state law.
At the outset, DEPCO argues that the complaint should be dismissed because the plaintiffs lack standing to institute this action. This argument is untenable.
DEPCO was enacted as a vehicle through which to reimburse aggrieved depositors whose funds were made inaccessible as a result of RISDIC's collapse and the closure of RISDIC-insured institutions, several of which are now in receivership and under the supervision of this Court. DEPCO's contention (brief at p. 8) that plaintiff-depositors lack standing because they have no personal stake in this action and that they do not risk injury in fact, economic or otherwise is without merit. Each such depositor has been statutorily recognized as a priority claimant in those receiverships. § 19-15-7, R.I.G.L. Accordingly, such depositors have standing to bring this action.
Further, the Court is satisfied that the plaintiffs have standing to pursue their claim for judgment under the Uniform Declaratory Judgments Act. Even if the issue of standing were somehow unclear, given the enormous public interest inherent in matters involving DEPCO and the crisis which grips these depositors and the state's economy, the Court would be derelict in not resolving the issue raised in the instant action. See,Kass v. Retirement Board of the Employees' Retirement System,567 A.2d 358, 359 n. 1 (R.I. 1989); In re Advisory Opinion tothe Governor (DEPCO), 593 A.2d 943, 946, 948 (R.I. 1991).
Plaintiffs contend that DEPCO is without lawful authority to commit funds to pay for the expenses of the Commission. They point out that Section 8 of the enabling act which established the Commission expressly provides that all of the Commission's expenses, including the cost of its special counsel and their assistant attorneys "shall be paid out of the general revenue of the state of Rhode Island."
DEPCO argues that it does not actually intend to fund the Commission. Pursuant to a resolution adopted by its board of directors on December 19, 1991 (the "Resolution"), DEPCO contemplates purchasing the Commission's "work product" which results from its investigation, i.e., the "documents, testimony, and other information" which has been and will continue to be gathered by the Commission in the course of its investigation. Further, DEPCO says that it would acquire such work product, not from the Commission, but from the Department of Administration. DEPCO claims that if it purchases the Commission's work product, any litigation it later pursues will not be burdened by the expense of duplicating the efforts expended by the Commission in civil actions aimed at recovering moneys from various defendants. DEPCO avers that the purchase of the Commission's work product is, in any event, within the scope of its statutorily granted powers. The Court disagrees.
In an imaginative definitional stretch, DEPCO contends that the Commission's work product is an "asset" within the meaning of the DEPCO Act which DEPCO is authorized to purchase. A review of the Act does not support that contention. The purchases legislatively contemplated under the DEPCO Act target the assets of closed financial institutions, § 42-116-2(c) and (e), not the work product of the Commission, which was not even in existence at the time the General Assembly created DEPCO.
Further, DEPCO's anfractuous method of acquiring the Commission's work product, from the Department of Administration rather than from the Commission directly, is not without significance. The clear inference to be drawn from DEPCO's declination to deal directly with the Commission is that DEPCO is plainly cognizant that the legislature has decreed that the Commission be funded only from the general revenue of the State. By allocating $2 million to the Department of Administration, DEPCO apparently expects to transmute its funds into "general revenue" which would then ostensibly become available for distribution to the Commission, which — as counsel for the Commission conceded at the January 6 hearing — has now exceeded its budget by approximately that same amount. DEPCO's attempt to accomplish indirectly what it well knows cannot be done directly is impermissible.
Further, it is unsettling that the Commission and/or the Department of Administration would even consider posting a for sale sign on the work product. It is most incongruous for the State to extract monies from DEPCO, itself a public entity and whose funds are earmarked for depositor reimbursement as well as for the payment of bonds, in exchange for the Commission's materials which themselves were gathered through public expense. Both the Commission and DEPCO have their genesis in the catastrophe which has been visited upon the depositors and the economy of this state. The Commission is charged with finding out what caused the crisis. DEPCO was created in an effort to cure it. For one to hold its investigative materials hostage from the other in order to replenish its working capital makes very little sense. Conscripting the Department of Administration as a conduit in an effort to achieve indirectly what cannot be done directly simply compounds the error.
Moreover, much of the Commission's work product which DEPCO covets is already in the public domain. The public hearings which the Commission has already held have generated thousands of pages of documents and transcribed testimony. Indeed, Section 1 of the enabling act which established the Commission mandates the Commission's "making a public presentation of the evidence uncovered by the aforesaid investigation at hearings to be conducted by the commission." Moreover, the Commission has represented to this Court that it is "fully committed to public disclosure of all relevant information at the appropriate time."[1] Efforts by the Commission to resist disclosure of other materials, during or after the conclusion of its investigation, may be tested pursuant to normal discovery procedures during the course of the subsequent civil litigation by DEPCO or through appropriate requests under this State's Access to Public Records Act, § 38-2-1 et seq., R.I.G.L.
It is the view here that, at bottom, DEPCO's willingness to assign up to $2 million for the Commission's work product stems from an understandable desire to shield the general Treasury — and taxpayers — from having to commit additional public funds to a Commission which has overreached its budgetary confines. As commendable as that desire may be, it finds no support in either the DEPCO Act or in the later legislation which spawned the Commission.
If the General Assembly, during its current session, determines that DEPCO should, in fact, be authorized to commit funds to support the Commission's expenses, it need merely say so, as long as such authorization does not jeopardize or run afoul of bonding provisions. To date, the legislature has not extended that authority to DEPCO, and this Court is not empowered to do so. Kastal v. Hickory House, Inc., 95 R.I. 366, 369,187 A.2d 262, 264 (R.I. 1963).
Accordingly, the Court finds and hereby declares that the Resolution adopted by the DEPCO board of directors, to the extent that it authorizes expenditure of DEPCO funds, directly or indirectly, for the so-called work product of the Commission, is statutorily proscribed. Absent further legislative authorization, the Court is constrained to hold that DEPCO is precluded from directly or indirectly using monies in its care, custody, or control to fund the expenses of the Commission.
[1] The above-quoted commitment by the Commission is set forth in its September 23, 1991 memorandum (page 14) opposing the Providence Journal's summary judgment motion aimed at obtaining the Commission's investigatory records. Providence Journal v.Sundlun et al., C.A. No. 91-2394. The Commission has resisted complete disclosure of its records because, in part, it fears that their premature release will jeopardize the investigation.