**In re ADVISORY OPINION TO THE GOVERNOR (Appointment to Fill Vacancy In Office of Lieutenant Governor).**

**No. 96–565–M.P.**

Supreme Court of Rhode Island.

Jan. 22, 1997.

Joseph S. Larissa, Jr./Harris Weiner, for Governor.

Lisa Dinerman, Special Asst. Attorney General, for Plaintiff.

John A. MacFadyen, III, Richard P. Kearns, Providence, for House.

Edward M. Fogarty, Providence, for Senate.

To His Excellency Lincoln Almond, Governor of the State of Rhode Island and Providence Plantations.

We have received from Your Excellency a request for our written opinion in accordance with article 10, section 3, of the Rhode Island Constitution on the following question.

"Does the Governor have authority pursuant to Article 9, Section 5 of the Rhode Island Constitution to fill a vacancy in the office of Lieutenant Governor for the remainder of a four-year term for that constitutional office?"

Upon receipt of your request the court invited briefs to be filed by those who were proponents of the Governor's power to appoint and also by those who opposed the purported appointive power of the Governor in respect to filling the vacancy in the office of Lieutenant Governor. Briefs were filed by the executive counsel to the Governor and the Attorney General, who supported the Governor's appointive power. Briefs were filed on behalf of the Rhode Island House of Representatives and its Speaker and on behalf of the Majority Leader of the Rhode Island Senate, opposing the purported appointive power of the Governor to fill the vacancy in the office of Lieutenant Governor.

All parties agree that the office of Lieutenant Governor became vacant by operation of law on January 7, 1997, when the incumbent

Lieutenant Governor, Robert A. Weygand, assumed office as a member of the United States House of Representatives. This action on his part vacated his office as Lieutenant Governor pursuant to the provisions of article 3, section 6, of the Rhode Island Constitution, which forbid any person holding office under the government of the United States to act as a general officer of this state or as a member of the General Assembly. It is undisputed that Lieutenant Governor Weygand took the oath of office as a member of the United States Congress on January 7, 1997, and that his doing so created a vacancy in the office of Lieutenant Governor.

The Governor argues that he has the power to appoint a person to fill this vacancy pursuant to article 9, section 5, of the Rhode Island Constitution which reads as follows:

> "**Authority to fill vacancies.**—The governor may fill vacancies in office not otherwise provided for by this Constitution or by law, until the same shall be filled by the general assembly, or by the people."

## I

### Propriety of the Request

■ Neither the proponents nor the opponents of the Governor's appointive power have challenged the propriety of this request. We have stated on numerous occasions that we shall give an advisory opinion to the Governor on a matter that has a bearing on a present constitutional duty awaiting performance by the Governor. *See, e.g., In re Advisory From The Governor*, 633 A.2d 664, 666 (R.I.1993); *In re Advisory Opinion (Chief Justice)*, 507 A.2d 1316, 1319 (R.I. 1986); *In re Request for Advisory Opinion Regarding House Bill 83–H–5640*, 472 A.2d 301, 302 (R.I.1984).

The present request asks our opinion concerning the power of the Governor to appoint a person to fill a vacancy in a constitutional office for the remainder of the prior incumbent's term. This question certainly has a bearing upon the performance of a constitutional duty by the Governor, and thus the request is appropriate and requires our written response.

## II

### Existence of the Power

■ The provisions of article 9, section 5, of the Rhode Island Constitution are straightforward and unambiguous. The Governor is endowed by these provisions with the authority (not mandatory) to "fill vacancies in office not otherwise provided for by this Constitution or by law, until the same shall be filled by the general assembly, or by the people." The Senate and the House as amici agree that there is no specific provision in the State Constitution for the filling of a vacancy in the office of Lieutenant Governor. This is contrasted with the clearly focused provisions contained in article 4, section 4, of the Constitution, which provide for filling of a vacancy in the offices of the Secretary of State, the Attorney General, or the General Treasurer by the Grand Committee of the General Assembly. This section also authorizes the Governor to appoint some person to fill such a vacancy until a successor is elected by the General Assembly and is qualified to act.

The House and the Senate are in consonance in contending that although the Constitution does not provide for the filling of a vacancy in the office of Lieutenant Governor, save by the general provisions of article 9, section 5, the provisions of that section are nevertheless not triggered by a vacancy in the office of Lieutenant Governor. They argue that other provisions of the Constitution provide for transfer of the functions of the office of Lieutenant Governor in his absence or inability to serve for any cause. For example, the Constitution does provide for the election of a person to preside over the Senate in the absence of the Lieutenant Governor in article 8, section 3. This section reads as follows:

> "**Presiding officer in absence of lieutenant governor.**—If by reason of death, resignation, absence, or other cause, the lieutenant governor is not present, to preside in the senate, the senate shall elect one of its own members to preside during such absence or vacancy; and until such election is made by the senate, the secretary of state shall preside. The presiding

officer of the senate shall preside in grand committee and in joint assembly."

The Constitution also provides in article 9, section 10, that in the event of a vacancy in both the offices of Governor and Lieutenant Governor, the Speaker of the House of Representatives "shall in like manner fill the office of governor during such vacancy." The amici House and Senate also contend that historical precedents under both the Charter of King Charles II of 1663 and the prior Constitution of 1843 militate against the propriety of a gubernatorial appointment of a person to fill a vacancy in the office of Lieutenant Governor.[1]

We confirm our observation contained in *Kass v. Retirement Board of the Employees' Retirement System,* 567 A.2d 358, 360 (R.I.1989), that " 'a page of history is worth a volume of logic' in determining the extent of state as well as federal constitutional limitations," quoting Justice Oliver Wendell Holmes in *New York Trust Co. v. Eisner,* 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963, 983 (1921). Nevertheless, we also adhere to the proposition that when a constitutional provision is clear and unambiguous, we must accord its provisions their plain and ordinary meaning, *City of Pawtucket v. Sundlun,* 662 A.2d 40, 45 (R.I.1995); *In re Advisory Opinion to the Governor,* 612 A.2d 1, 7 (R.I.1992), and "no word or section must be assumed to have been unnecessarily used or needlessly added." *Kennedy v. Cumberland Engineering Co.,* 471 A.2d 195, 198 (R.I.1984). Historical anecdotal occurrences cannot overcome a clear and unambiguous grant of constitutional power.

We also agree, as we set forth in *Kass,* that historically the power of the General Assembly has been plenary and unlimited, save as this authority may have been limited by the Constitution of the United States and/or the Constitution of the State of Rhode Island. 567 A.2d at 360. Unlike the United States Congress, the Rhode Island General Assembly does not look to our State Constitution for grants of power. *In re Advisory Opinion to the House of Representatives,* 485 A.2d 550, 553 (R.I.1984); *Payne & Butler v. Providence Gas Co.,* 31 R.I. 295, 316, 77 A. 145, 154 (1910). "Accordingly, this court has consistently adhered to the view that the General Assembly possessed 'all of the powers inhering in sovereignty other than those which the constitution textually commits to the other branches of our state government and that those that are not so committed * * * are powers reserved to the general assembly.' " *Kass,* 567 A.2d at 361 (quoting *Nugent v. City of East Providence,* 103 R.I. 518, 525-26, 238 A.2d 758, 762 (1968)). In answering the question propounded by the Governor, we must look to the text of article 9, section 5, to determine whether that provision of our Constitution endows the Governor with the power to fill a vacancy in the office of Lieutenant Governor. We believe that it does in clear and unambiguous terms.

Although article 8, section 3, of the Constitution provides for the performance of *functions* by others "[i]f by reason of death, resignation, absence, or other cause, the lieutenant governor is not present," no provision purports to deal with the filling of a *vacancy* in that office save the general provisions of article 9, section 5. Consequently this section is controlling.

In answering the question propounded by Your Excellency, the justices of this court do not purport to comment upon policy questions relating to the desirability or the necessity of filling a vacancy in this general office but only respond to the question concerning the power of the Governor to do so. We are of the opinion that article 9, section 5, allows the Governor to fill any vacancy that is not otherwise provided for by the Constitution or *by law.*

---

1. The amici and our colleague cite numerous instances under the charter when the General Assembly filled vacancies in the office of deputy governor and numerous instances under the Constitution of 1843 when vacancies in the office of Lieutenant Governor either were filled by the Grand Committee or were left vacant. This historical outline is interesting but scarcely controlling. We must construe the current provisions of the Constitution of 1986. Moreover, the mere fact that a constitutional power has not been exercised does not prove that the power does not exist.

Given the plenary authority of the General Assembly, we have little doubt that it could have enacted a statute providing for the filling of a vacancy in the office of Lieutenant Governor as has been suggested by the Attorney General in his brief. We find no express prohibition in the Constitution withholding such power, nor is it forbidden by necessary implication.[2] Nevertheless, the General Assembly has not enacted such a statute, and therefore, the Governor's power to appoint is clearly authorized by article 9, section 5, of the Constitution.

### III

#### Duration of Such Appointment

■ In light of our recognition of the plenary power of the General Assembly, we cannot say unequivocally that absent death, resignation, or other circumstances causing an additional vacancy a person appointed by the Governor pursuant to article 9, section 5, would serve until the next general election. We are of the opinion that such person would be expected to serve for that period unless the General Assembly were to take action that might diminish or shorten such period of service by providing another method for filling the vacancy for the remainder of the term of office. *See, e.g., Casey v. Willey*, 89 R.I. 87, 96–97, 151 A.2d 369, 374 (1959); *In re Filling of Vacancies by the Governor (Railroad Comm'r)*, 28 R.I. 602, 606, 67 A. 802, 803 (1907). In issuing this caveat, we do not purport to determine the validity of any such actions as might be taken by the General Assembly subsequent to an appointment by the Governor but only to indicate that such an action might have a significant bearing upon the term during which the person appointed to the vacant office of Lieutenant Governor might serve. However, we reiterate that the Governor's constitutional authority to fill vacancies "is only for a temporary purpose—until the normal elective power

shall act." *In re Filling of Vacancies by the Governor*, 28 R.I. at 606, 67 A. at 803. With respect to the office of Lieutenant Governor, "the normal elective power" is the people. The General Assembly has not yet attempted to act in order to invoke this elective power and we have no way of knowing whether it will do so before the existing term of office expires, or if it does act, whether such actions as it may decide to take would be valid.

For the reasons stated, we answer the question addressed to us by the Governor in the affirmative with the caveat that action by the General Assembly might affect the length of the term that such an appointee might serve.

/s/ Joseph R. Weisberger
    JOSEPH R. WEISBERGER
    Chief Justice

/s/ John P. Bourcier
    JOHN P. BOURCIER
    Justice

/s/ Robert G. Flanders, Jr.
    ROBERT G. FLANDERS, Jr.
    Justice

/s/ Donald F. Shea
    DONALD F. SHEA
        Justice (retired and sitting by designation)

LEDERBERG, Justice, dissenting.

I respectfully disagree with the majority's conclusion that section 5 of article 9 of the Rhode Island Constitution authorizes a Governor to fill by appointment a vacancy in the office of Lieutenant Governor. Rather, section 5 of article 9 grants a limited and defined power to a governor to fill only those vacancies "not otherwise provided for by this Constitution or by law." The section does not endow a governor with authority to fill a vacancy in the constitutional office of Lieutenant Governor because the Constitution provides that the people shall *elect* a Lieutenant Governor. It is inconceivable that the

---

**2.** The maxim *"expressio unius est exclusio alterius"* is too weak a foundation upon which to rest a prohibition based upon necessary implication. *See Opinion of the Court to the Governor in the Matter of the Constitutional Convention*, 55 R.I. 56, 69–73, 178 A. 433, 440–41 (1935). The requirement of article 4, section 4, of the Rhode Island Constitution that vacancies in the office of

the Secretary of State, the Attorney General, or the General Treasurer be filled in a certain manner is not inconsistent with an exercise of power by the General Assembly to provide by law for the filling of a vacancy in the office of Lieutenant Governor in a different or, indeed, in a similar manner. 55 R.I. at 69–73, 178 A. at 440–41.

framers intended that a vacancy in that particular constitutional office be filled "by appointment" by the Governor for the very reason that the majority recognizes, namely, "other provisions of the constitution provide for the performance of [the] *functions*" of that office during any such vacancy. Hence, such a vacancy *is* "otherwise provided for."

The constitution assigns two duties to the Lieutenant Governor: first, to serve as the presiding officer of the Senate and the Grand Committee, R.I. Const. art. 8, sec. 2, and second, to accede to the governorship in the event of a vacancy in that office, R.I. Const. art. 9, sec. 9. The constitution specifically provides that, in the absence of the Lieutenant Governor, "the senate shall elect one of its own members to preside." Article 8, section 3. In fact, even the Lieutenant Governor's duty to preside over the Senate and the Grand Committee will expire on January 14, 2003, at which time "the senate shall elect its president, who shall preside in the senate and in grand committee." Article 8, section 2. In respect to the unlikely event that vacancies arise in the offices of both Governor and Lieutenant Governor, the Constitution provides that the Speaker of the House of Representatives would accede to the governorship. R.I. Const. art. 9, sec. 10. Thus, by expressly providing for the assumption of *all* duties assigned to the Lieutenant Governor, the Constitution has thereby plainly "provided for" the eventuality of a vacancy in that office. Consequently, the Governor's authority under article 9, section 5, to fill vacancies that are "not otherwise provided for" clearly does not apply to a vacancy in the office of Lieutenant Governor.

My colleagues aptly assert that "[a] page of history is worth a volume of logic." Happily, in this case, we do not require volumes of logic to compel the conclusion that the office is to remain vacant in the event of absence, inability, or vacancy. And, in fact, there are volumes of *history* to support this conclusion.

In each instance that the office of Lieutenant Governor has become vacant since the adoption of the Constitution of 1843, the position has remained vacant until the people elected a Lieutenant Governor at the following election. "Our task in construing consti-tutions is to give effect to the intent of the framers." *City of Pawtucket v. Sundlun,* 662 A.2d 40, 45 (R.I.1995). In so doing, it is appropriate for this Court to consult extrinsic sources and to "look to the history of the times and examine the state of affairs as they existed when the [provisions were] framed and adopted." *Id.* In this case, the historical record reveals seven occasions when the office of Lieutenant Governor became vacant. Rhode Island Manual at 205–13 (1991–1994).

In July 1853, just eleven years after the Constitution was adopted, the Lieutenant Governor acceded when the Governor resigned, and the office of lieutenant governor remained vacant for ten months (out of a twelve-month term) until May 1855. In September 1862, the Lieutenant Governor resigned after his election to the United States Senate, and the office of Lieutenant Governor remained unoccupied for eight months until May 1863. In February 1928, the Lieutenant Governor acceded upon the death of the Governor, and the office of Lieutenant Governor became vacant for eleven months (of a two-year term) until January 1929. From April 1944 to January 1945, a period of nine months, the Lieutenant Governor's office was unoccupied after the Lieutenant Governor resigned to accept a judicial appointment. From October 1945 to January 1947, the Lieutenant Governor's office was vacant for fifteen months of a two-year term, when the Governor resigned and the Lieutenant Governor acceded. In December 1950, the Governor again resigned, and the Lieutenant Governor acceded to his office, creating a vacancy in the Lieutenant Governor's office until January 1951. Finally, in April 1956, the Lieutenant Governor resigned upon his appointment to Superior Court, and the office of lieutenant governor remained vacant for nine months until January 1957. There is no evidence in the historical record that the Governor, or for that matter the General Assembly, ever filled or attempted to fill any of these vacancies by appointing a new Lieutenant Governor.

The majority refers in footnote 1 *supra* to "numerous instances under the Constitution of 1843 when vacancies in the office of Lieutenant Governor either were filled by the

Grand Committee or were left vacant" and notes that the "historical outline is interesting but scarcely controlling [because w]e must construe the current provisions of the Constitution of 1986." As the historical outline clearly reveals, however, vacancies in the office of Lieutenant Governor were *never* filled after the 1843 Constitution was adopted.[3] Moreover, the provision of the 1986 Constitution we are asked to construe, namely article 9, section 5, is identical to article 7, section 5, of the 1843 Constitution. Ergo, history in this case is not merely "interesting" but is compelling and conclusive as well.

Changes in the constitutional framework of government should not be effectuated without the approval of the people: " 'the constitution which at any time exists, till changed by an explicit and authentic act of the whole people, is sacredly obligatory upon all.' " R.I. Const. art. 1, sec. 1 (quoting the Father of his Country). The comprehensive review of our constitution in 1986 presented an opportunity for the framers to provide for filling this vacancy by appointment had they intended that the office should *not* remain vacant. For example, article 4, section 4, in contrast, *does* direct that vacancies in the constitutional offices of Secretary of State, General Treasurer, and Attorney General be filled by the General Assembly. That section specifically grants power to the Governor to fill vacancies in these three offices in the event the Legislature is not in session, but such appointees serve only "until a successor elected by the general assembly is qualified to act."

The majority's conclusion misapplies the constitutional history of this state and fails to defer to a century and a half of this court's jurisprudence on the respective powers of the legislative and executive departments.

"[T]he power of the General Assembly in this state, as in other states, has been plenary and unlimited, save as this authority may have been limited by the Constitution of the United States and the Constitution of the State of Rhode Island." *Kass v. Retirement Board of the Employees' Retirement System*, 567 A.2d 358, 360 (R.I.1989). The framers "stoutly * * * refused to vest the executive department with full executive powers." *Gorham v. Robinson*, 57 R.I. 1, 23, 186 A. 832, 844 (1936). Fourteen years after the adoption of the 1842 Constitution, this Court recognized the extremely limited power of the executive, stating that "[t]he executive power had been nominal, merely, under the charter; and the constitution extends it very little." *G & D Taylor & Co. v. Place*, 4 R.I. 324, 349–50 (1856). And, only a year ago, this court concluded that "the executive department—chief executive has today essentially the same limited powers first given in 1842. All that have been added in the intervening one hundred and fifty-three years since that time, are the Governor's limited pardoning and veto powers." *Narragansett Indian Tribe v. State*, 667 A.2d 280, 281 (R.I.1995).

In spite of the ample history of the office of Lieutenant Governor remaining vacant and in disdain of our unwavering precedents that have construed the Governor's power as "nominal" and "limited," my colleagues read the catchall provision of article 9, section 5, as providing the remarkable enumerated power to appoint a constitutional officer. The majority does this notwithstanding our previous interpretation of this section as "only a power given to the executive for general convenience *in case some other custodian of it has not been provided,* and it is only for a temporary purpose—until the normal elective power shall act." (Emphasis

---

3. The record reveals one instance in which a vacancy in the position of Lieutenant Governor-*elect* was filled by the General Assembly. On December 16, 1901, governor-elect William Gregory died, and Charles Kimball, who at the time was both incumbent Lieutenant Governor and Lieutenant Governor-elect, became Governor. Rhode Island Manual at 206–07, 212–13 (1991–1994). On February 18, 1902, the Grand Committee elected George Shepley to the position of Lieutenant Governor. It appears that the authority for this election was section 3 of amendment XI to the Constitution of 1843, which is substantially the same as article 4, section 3, of the 1986 Constitution, pertaining to vacancies among general officers-*elect*, and not any general authority to fill vacancies arising during the term of office of Lieutenant Governor. In any event, history provides no precedent of a Governor's filling a vacancy in the lieutenant governorship, which is the issue before us.

added.) *In re Filling of Vacancies by the Governor (Railroad Comm'r)*, 28 R.I. 602, 606, 67 A. 802, 803 (1907).

It is my opinion that one cannot extract from article 9, section 5, the grant of the extraordinary executive power to appoint the Lieutenant Governor, a constitutional general officer, who, by the very mandate of the Constitution, must be *elected* by the citizens of this state. "[S]uch a construction would go far beyond any meaning which can be legitimately deduced from the text and would be an attempt to stretch its provisions to include circumstances not contemplated by those who framed it." 28 R.I. at 606, 67 A. at 804.