**In re REQUEST OF THE SENATE FOR AN ADVISORY OPINION (Election of Lieutenant Governor by the General Assembly in Grand Committee).**

**No. 97–81–M.P.**

Supreme Court of Rhode Island.

May 28, 1997.

Edward Fogarty, M. Teresa Paiva Weed, Middletown, Lisa Dinerman, Special Asst. Attorney General, John A. MacFadyen, 3rd., Richard P. Kearns, Providence, for Plaintiff.

Joseph Kelly, Michael Sullivan, Warwick, Harris Weiner, Joseph S. Larisa, Jr., Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and SHEA (Retired) JJ.

To the Honorable, the Senate of the State of Rhode Island and Providence Plantations:

We have received from Your Honors a resolution requesting, in accordance with article 10, section 3, of the Constitution of the State of Rhode Island, our written opinion on the constitutionality of proposed legislation that would provide for the filling of vacancies in the office of Lieutenant Governor. Specifically, we have been asked to determine:

"Would the proposed act, 97–S 333, 'An Act Relating to State General Officers,' if duly enacted into law, be violative of Section 5 of Article IX of the Constitution of the State of Rhode Island and Providence Plantations?"

Upon receipt of your request, this Court invited briefs from proponents and opponents of the constitutionality of Senate Bill 97–S 333 (hereinafter, the proposed act or bill). In response, a brief was filed on behalf of the Senate, arguing in support of the constitutionality of the proposed act, and briefs were filed by the Governor, the Lieutenant Governor, and the Attorney General of the State of Rhode Island, arguing in opposition to the constitutionality of the proposed act. On April 7, 1997, counsel for the Senate, the Governor, and the Lieutenant Governor appeared in oral argument before this Court.

## Facts and Procedural History

There is no dispute between the parties in respect to the events that preceded this request by the Senate for an advisory opinion. On January 7, 1997, the office of Lieutenant Governor became vacant by operation of law when the incumbent Lieutenant Governor, Robert A. Weygand, assumed office as a member of the United States House of Representatives. In anticipation of this vacancy, the Governor of the State of Rhode Island requested an advisory opinion from this Court on the question of whether the Governor has the "authority pursuant to Article 9, Section 5 of the Rhode Island Constitution to fill a vacancy in the office of Lieutenant [G]overnor for the remainder of a four-year term for that constitutional office[.]" Article 9, section 5, of the State Constitution provides:

"**Authority to fill vacancies.**—The governor may fill vacancies in office not otherwise provided for by this Constitution or by law, until the same shall be filled by the general assembly, or by the people."

In answer to the Governor's request, a majority of this Court stated that article 9, section 5, clearly and unambiguously "endows the Governor with the power to fill a vacancy in the office of Lieutenant Governor." *In re Advisory Opinion to the Governor (Appointment to Fill Vacancy in Office of Lieutenant Governor)*, 688 A.2d 288, 291 (R.I.1997) (hereinafter *Lieutenant Governor I* ). This Court left undecided, however, the question of whether the General Assembly could provide by statute for the filling of a vacancy in the office of the Lieutenant Governor and, if it could, what effect such a statute might have on the tenure of a Lieutenant Governor appointed by the Governor pursuant to his authority under article 9, section 5. *Id.* at 292.

On January 29, 1997, the Governor appointed Bernard A. Jackvony, and two days later Jackvony was sworn in as Lieutenant Governor. On February 4, 1997, Senate Bill 97–S 333 was introduced by several senators. The bill, if enacted, would amend G.L.1956 chapter 2 of title 17 by adding thereto the following section:

"17–2–4.1. *Vacancies in the office of lieutenant governor.*—(a) If the office of lieutenant governor shall become vacant or shall have become [vacant], by reason of death, resignation or otherwise, the governor may fill such vacancy temporarily by appointing some person to serve as lieutenant governor until the said vacancy shall be filled by the general assembly in accordance with subsection (b) of this section.

(b) If the office of lieutenant governor shall become vacant or shall have become vacant, by reason of death, resignation or otherwise, the general assembly in grand committee shall elect some person to fill the said vacancy." (Emphasis added.)

The bill further provides that the act shall take effect upon passage and have retroac-

tive application to January 1, 1997. On February 5, 1997, the Senate passed a resolution, to which we now respond, seeking an advisory opinion on the constitutionality of the proposed act.

### Constitutionality of the Proposed Act

Subsection (a) of the proposed act would statutorily recognize the Governor's constitutional appointive power under article 9, section 5, of the Rhode Island Constitution in accordance with *Lieutenant Governor I.* But under the proposed act such an appointment would be temporary until the General Assembly acts to fill the position. Specifically, under subsection (b) of the bill, the Governor's appointee would remain in office until "the general assembly in grand committee shall elect some person to fill the said vacancy." Because the act would be applied retroactively, it would enable the General Assembly, in effect, to replace Jackvony, the Governor's current appointee to the office of Lieutenant Governor, with a person to be elected by the General Assembly.

The Senate has argued that the proposed act falls within the Legislature's plenary power, long recognized by this Court. The Senate has further opined that the language of article 9, section 5, of the State Constitution supports its claim of legislative authority to elect a Lieutenant Governor in the event of a vacancy in that office, inasmuch as that section permits the Governor to "fill vacancies in office not otherwise provided for by this Constitution or *by law.*" (Emphasis added.) In the Senate's view, this constitutional provision expressly recognizes the authority of the General Assembly to provide by statute for vacancies in office not otherwise provided for in the State Constitution, including any vacancy in the office of Lieutenant Governor.

■ Before addressing the Senate's arguments, we reiterate, as this Court has held on numerous occasions, that the legislative power of the General Assembly is plenary and unlimited, save as confined by the textual restraints of the Rhode Island and United States Constitutions. *E.g., City of Pawtucket v. Sundlun,* 662 A.2d 40, 44 (R.I.1995); *Kass v. Retirement Board of the Employees'* *Retirement System,* 567 A.2d 358, 360 (R.I. 1989); *In re Advisory Opinion to the House of Representatives,* 485 A.2d 550, 553 (R.I. 1984). Consequently, the Legislature may exercise its powers "subject only to limitations found either expressly or by necessary implication in the constitutions." *In re Advisory Opinion to the House of Representatives,* 485 A.2d at 555. On this basis, we recently advised in *Lieutenant Governor I* in respect to the Legislature's authority to fill the vacancy in the Lieutenant Governor's office that

> "[g]iven the plenary authority of the General Assembly, we have little doubt that it could have enacted a statute providing for the filling of a vacancy in the office of Lieutenant Governor * * *. We find no express prohibition in the Constitution withholding such power, nor is it forbidden by necessary implication." 688 A.2d at 292.

■ The Senate, although not disputing the authority of the Governor to make an appointment to fill a vacancy in the office of Lieutenant Governor, has taken the position that the appointment in this case is temporary, pending the General Assembly's enactment of legislation providing for the filling of a vacancy for the remainder of the term of office. Moreover, the Senate has argued that even after the Governor has acted to fill a vacancy as he has done in this case, the General Assembly may determine the duration of that appointment. We agree with the Senate that an appointment to the office of Lieutenant Governor made by the Governor under article 9, section 5, is temporary and does not necessarily extend until the next quadrennial election. We recognized, but did not resolve, this issue in *Lieutenant Governor I;* after concluding that the Governor's power to appoint a Lieutenant Governor was authorized by article 9, section 5, we stated:

> "In light of our recognition of the plenary power of the General Assembly, we cannot say unequivocally that absent death, resignation, or other circumstances causing an additional vacancy a person appointed by the Governor pursuant to article 9, section 5, would serve until the next general election. We are of the opinion that such

person would be expected to serve for that period unless the General Assembly were to take action that might diminish or shorten such period of service by providing another method for filling the vacancy for the remainder of the term of office. * * * However, we reiterate that the Governor's constitutional authority to fill vacancies 'is only for a temporary purpose—until the normal elective power shall act.' * * * With respect to the office of Lieutenant Governor, 'the normal elective power' is the people. The General Assembly has not yet attempted to act in order to invoke this elective power and we have no way of knowing whether it will do so before the existing term of office expires, or if it does act, whether such actions as it may decide to take would be valid." *Lieutenant Governor I,* 688 A.2d at 292.

Thus, if the General Assembly had enacted a statute such as § 17–2–4.1 *before* the Governor had exercised his constitutional authority under article 9, section 5, we have no doubt but that such an enactment would have been held constitutional. The General Assembly would thereby have precluded any subsequent exercise of the Governor's article 9, section 5, power to fill a vacancy in the office of Lieutenant Governor, because such a vacancy would then have been one "provided for * * * by law."

■ For this same reason, we are of the opinion that this proposed legislation is not violative of article 9, section 5, of our State Constitution with respect to any *future* vacancies in the office of Lieutenant Governor. This legislation, if enacted, would bring the method for filling vacancies *during* the term of a Lieutenant Governor into conformity with the constitutional method specified for filling vacancies that occur *after* a Lieutenant Governor is elected but *before* commencement of the term. *See* R.I. Const. art. 4, sec. ("[w]hen * * * the lieutenant governor-[elect] * * * [is] so incapacitated * * * the general assembly shall * * * meet in grand committee and elect some person * * * to fill the office").

■ We also hold, however, that the proposed legislation violates article 9, section 5, of the State Constitution insofar as it applies its provisions retroactively. After a Governor has exercised his constitutional authority under article 9, section 5, by filling a vacancy in office "not otherwise provided for by this Constitution or by law," that appointment continues " 'until the normal elective power shall act.' * * * With respect to the office of Lieutenant Governor, 'the normal elective power' is the people." *Lieutenant Governor I,* 688 A.2d at 292. The retrospective portion of the proposed act would substitute the General Assembly for the people as "the normal elective power" *after* the Governor has already exercised his temporary appointive power. In this respect, we conclude that the bill runs contra to the last clause of article 9, section 5, which designates the General Assembly to fill vacancies after the Governor has temporarily done so in respect to those offices for which the General Assembly is the normal elective power, but designates the people to fill vacancies after the Governor has temporarily done so in those offices for which the people are the normal elective power. As we have previously stated in *Lieutenant Governor I,* the office of Lieutenant Governor falls into this latter category.

In summary, the General Assembly has had and still has the power to provide *prospectively* for the filling of a vacancy in the office of Lieutenant Governor. It did not exercise this power, and thus the Governor exercised the power to fill the vacancy conferred upon him by our Constitution. Once exercised, the power of temporary appointment was exhausted. The General Assembly could not retrospectively displace the incumbent so appointed by the Governor through action of the Grand Committee. It could only shorten his term before the next general election by invoking the normal elective power of the people. This power could be invoked only by calling a special election.

In respect to future vacancies in this office, the General Assembly may provide by law for the filling of such vacancies by the Grand Committee. The proposed act, however, would not conform to the constitutional limitation in its retroactive application.

Joseph R. Weisberger
JOSEPH R. WEISBERGER
Chief Justice

Victoria Lederberg
VICTORIA LEDERBERG
Justice

John P. Bourcier
JOHN P. BOURCIER
Justice

Robert G. Flanders, Jr.
ROBERT G. FLANDERS, JR.
Justice

Donald F. Shea
DONALD F. SHEA
Justice (retired and sitting by designation)